The Honorable J.E. Cooksey Chairman Jefferson County Board of County Commissioners Room 10, County Courthouse Monticello, Florida 32344
Dear Chairman Cooksey:
You ask substantially the following question:
Must a county share local option gas tax levied pursuant to s.336.025, F.S. (1992 Supp.), with an eligible municipality within the county, when the county is using such tax proceeds to fund infrastructure rather than transportation?[1]
In sum:
A county eligible to levy a local option gas tax pursuant to s.336.025, F.S. (1992 Supp.), must distribute the proceeds to eligible municipalities as directed therein, regardless of whether the funds are used for infrastructure.
Section 336.025, F.S. (1992 Supp.), allows counties to impose a local option gas tax upon every gallon of motor fuel and special fuel sold in a county and taxed under the provisions of Part I or Part II, Ch. 206, F.S. (1992 Supp.).[2] Only those municipalities and counties eligible for participation in the distribution of moneys under Parts II and VI of Ch. 218, F.S., are eligible to receive moneys under this section.[3]
A county may levy the tax by ordinance adopted by a majority vote of the governing body or approval by referendum.[4] Under this procedure,
[t]he county may, prior to June 1, establish by interlocal agreement with one or more of the municipalities located therein, representing a majority of the population of the incorporated area within the county, a distribution formula for dividing the entire proceeds of the local option gas tax among the county government and all eligible municipalities within the county.[5] (e.s.)
In the absence of an interlocal agreement, the county may, prior to June 10, adopt a resolution of intent to levy the tax.[6] If no interlocal agreement or resolution is adopted, municipalities representing more than 50 percent of the county population may, prior to June 20, adopt uniform resolutions approving the local option tax, establishing the duration of the levy and the rate authorized, and setting the date for a countywide referendum on whether to impose the tax.[7]
In the event the tax is levied by county resolution or by uniform resolutions of the municipalities, the proceeds of the tax must be distributed "among the county government and eligible municipalities based on the transportation expenditures of each for the immediately preceding 5 fiscal years."[8] Any newly incorporated municipality which is eligible for participation in the distribution of moneys under Parts II and VI, Ch. 218, F.S., located in a county levying the local option gas tax is also entitled to receive a share of the tax revenues.[9]
The Legislature has made it clear, by the plain language of the statute, that proceeds from the local option gas tax are to be distributed among the county government and the eligible municipalities within the county. Where the Legislature has prescribed the manner in which a thing is to be done, it is, in effect, a prohibition against its being done in any other way.[10]
Generally, local option gas tax proceeds received pursuant to s.336.025, F.S. (1992 Supp.), may be used by the county and municipal governments only for transportation expenditures.[11]
However, s. 336.025(8), F.S. (1992 Supp.), provides that counties with a population of 50,000 or less on April 1, 1992, may use the tax proceeds to fund infrastructure projects, if consistent with the county's comprehensive plan and only after the local government, prior to the fiscal year in which the funds will be used, has held a duly noticed public hearing and adopted a resolution certifying that the local government has met all of the transportation needs identified in its comprehensive plan. Thus, under the specified conditions, a county with a population of 50,000 or less may use the proceeds from the local option gas tax to fund infrastructure projects. There is nothing in the statute, however, indicating that a county using its gas tax proceeds for infrastructure purposes is entitled to all of the proceeds from the gas tax in the county, to the exclusion of the municipalities eligible to receive distributions pursuant to s. 336.025, F.S. (1992 Supp.). Absent such authority, it does not appear that Jefferson County may alter the distribution of proceeds from the local option gas tax to deprive eligible municipalities of their share of the tax proceeds.
Accordingly, a county eligible to levy a local option gas tax pursuant to s. 336.025, F.S. (1992 Supp.), must distribute the proceeds to eligible municipalities within the county as directed therein, regardless of whether the funds are used for transportation or infrastructure.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Your second question regarding whether a municipality may be required to participate in the funding of a jail necessarily involves comment upon the activities of another governmental entity. Absent a request from the governmental entity in question, this office may not offer a legal opinion. See, s. 16.01(3), F.S., and Statement Concerning Attorney General Opinions, Annual Report of the Attorney General, p. x, (authority of this office to render legal opinions limited to public officials or entities at the request of the public official or entity and on questions relating to their own official duties).
[2] Part I, Ch. 206, F.S. (1992 Supp.), allows taxation of motor fuels and Part II, Ch. 206, F.S. (1992 Supp.), allows taxation of special fuels.
[3] Section 336.025(6), F.S. (1992 Supp.). Part II, Ch. 218, F.S., the Florida Revenue Sharing Act of 1972, allows those units of local government meeting the requirements in s. 218.23, F.S., to share in tax proceeds deposited in the revenue sharing trust funds created pursuant to the act. Part VI, Ch. 218, F.S., allows eligible county or municipal governments to receive a portion of the local government half-cent sales tax provided therein.
[4] Section 336.025(3)(a), F.S. (1992 Supp.).
[5] Section 336.025(3)(a)1., F.S. (1992 Supp.).
[6] Section 336.025(3)(a)2., F.S. (1992 Supp.).
[7] Section 336.025(3)(b), F.S. (1992 Supp.).
[8] Section 336.025(4)(a), F.S. (1992 Supp.).
[9] Section 336.025(4)(b), F.S. (1992 Supp.).
[10] See, Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944) (when the controlling law directs how a thing shall be done that is, in effect, a prohibition against its being done in any other way).
[11] Section 336.025(1)(c), F.S. (1992 Supp.). "Transportation expenditures" is defined in s. 336.025(7), F.S. (1992 Supp.), to mean expenditures for the following programs: public transportation operations and maintenance; roadway and rightof-way maintenance and equipment; roadway and right-of-way drainage; street lighting; traffic signs, traffic engineering, signalization, and pavement markings; bridge maintenance and operation; or debt service and current expenditures for transportation capital projects in the foregoing program areas, including construction or reconstruction of roads.